

**FILED**
July 30, 2021
ST-2020-CV-00020
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
*******

| | |
|---|---|
| JARRAH M. ELGADI, | ) CASE NO. ST-2020-CV-00020 |
| | ) |
| Plaintiff, | ) ACTION FOR DECREE OF |
| -vs- | ) JUDICIAL DISSOLUTION AND WINDUP |
| | ) |
| IDEAL DEVELOPMENT, LLC, | ) |
| | ) |
| Defendant. | ) |

Cite as: 2021 VI Super 80U

## MEMORANDUM OPINION AND ORDER

¶1 **THIS MATTER** is before the Court on:

1. Defendant's Motion To Disqualify ("Motion"), filed March 24, 2020;

2. Plaintiff's Opposition To Motion To Disqualify, filed April 15, 2020;

3. Defendant's Reply To Opposition To Motion To Disqualify ("Reply"), filed May 5, 2020;

4. Plaintiff's Motion For Leave To File Sur-Response To Reply To Opposition To Motion To Disqualify ("Motion For Leave"), filed May 14, 2020; and

5. Plaintiff's Sur-Response To Reply To Opposition to Motion To Disqualify ("Sur-Response"), filed May 14, 2020.

¶2 The Court will not disqualify Plaintiff Jarrah M. Elgadi's ("Elgadi")'s counsel as the current matter is not the same or a substantively similar matter to the one counsel previously worked on, the risk of prejudice is slight, Elgadi's right to chosen counsel is not outweighed by Defendant's interest in continued loyalty, and the integrity of court proceedings will not be corrupted.

### I. INTRODUCTION

¶3 On January 23, 2013, Shorn T. Joseph ("Joseph") filed Articles of Organization creating the company Ideal Development, LLC ("Ideal").[1] The purpose of the company is to hold certain real properties in the U.S. Virgin Islands for development or resale.[2] On July 7, 2014, Salem Zuhdi ("Zuhdi") became a member with a 51% equity interest in Ideal, while Joseph became a member with a 49% interest.[3] On September 2, 2016, Joseph allegedly sold one-half (1/2) of his

---

[1] Def.'s Mot. Ex. 2.
[2] Def.'s Mot. Ex. 2.
[3] Def.'s Mot. Ex. 2.

membership interest to Elgadi for $362,000.00.[4] Elgadi filed his Complaint on January 15, 2020, seeking a judicial dissolution of Ideal and enforcement of his right to participate in the winding up of Ideal's affairs.[5]

¶4     Ideal states in its Motion that Attorney Carol Rich ("Rich"), counsel for Elgadi, drafted a Memorandum of Understanding between Joseph and Zuhdi, and provided "other, substantial, confidential legal services in forming the relationship between Ideal's members."[6] Further, Ideal avers that neither member of Ideal has consented to allow Rich to represent Elgadi in this matter.[7] Ideal argues that Rich must be disqualified because she "represented Ideal in a substantially related matter" and she was "intimately involved in constructing Ideal's current formation."[8]

¶5     Ideal contends that Rule 1.9 of the Model Rules of Professional Conduct precludes Rich from representing Elgadi.[9] Ideal maintains that Elgadi insists he is a member of Ideal and Ideal insists he is not, and the Memorandum of Understanding Rich allegedly drafted, along with other agreements, control who can become a member of Ideal.[10] Thus, it is Ideal's position that the Memorandum of Understanding is an intimate part of the claims of this case.[11] Ideal also states that the July 7, 2014 First Amendment to Articles of Organization of Ideal Development, LLC was drafted by Rich, and that Rich may be a necessary witness in this case.[12] Thus, Ideal argues that Rich must be disqualified.

¶6     Elgadi argues that Ideal has not provided any evidence Rich represented Ideal, but, rather, Ideal's Motion is based on counsel's unsworn representations.[13] Elgadi also argues that Ideal's Motion does not comport with the basic requirements of Virgin Islands Rule of Civil Procedure 6-1.[14] Elgadi argues further that Rich has fully complied with her ethical obligations under Rule 211.1.9 of the Virgin Islands Rules of Professional Conduct.[15] Elgadi asserts that Rich was not retained as counsel for Ideal, but on behalf of Zuhdi, and she facilitated the execution of a Memorandum of Understanding that had already been drafted, as well as an Amendment to Ideal's Articles of Organization.[16] Elgadi asserts, citing to the Affirmation of Carol Rich, Esq., that "Attorney Rich obtained no information, confidential or otherwise, regarding Ideal, other than what is expressly stated within the four corners of the [Memorandum of Understanding], or is contained within publicly recorded documents."[17]

---

[4] Pl.'s Compl. ¶ 11.
[5] Pl.'s Compl. ¶¶ 26-35.
[6] Def.'s Mot. 1.
[7] Def.'s Mot. 1.
[8] Def.'s Mot. 1.
[9] Def.'s Mot. 1-2. MODEL RULES OF PROF'L CONDUCT r. 1.9(a) (AM. BAR ASS'N 2019) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.").
[10] Def.'s Mot. 2.
[11] Def.'s Mot. 2.
[12] Def.'s Mot. 2.
[13] Pl.'s Opp'n 1.
[14] Pl.'s Opp'n 1.
[15] Pl.'s Opp'n 1.
[16] Pl.'s Opp'n 2.
[17] Pl.'s Opp'n 2; Pl.'s Opp'n Ex. 1 ¶¶ 7, 9, 10, 11.

¶7    Elgadi also asserts that Rich's "brief and limited representation of Zuhdi ended years before Ideal acquired [the] properties" it now operates.[18] Additionally, Elgadi acquired his interest in Ideal nearly two (2) years after Rich terminated her representation of Zuhdi, and Elgadi retained Rich four (4) years after her representation terminated.[19] Elgadi also points out that Ideal bases its allegation of unethical conduct on the wrong rule, as the Virgin Islands Rules of Professional Conduct, not the Model Rules of Professional Conduct, govern.[20] Nevertheless, Elgadi argues that cases interpreting the Model Rules of Professional Conduct are still authoritative, as the two (2) rules are largely the same.[21]

¶8    Elgadi then asserts that "disqualification is considered a drastic measure"[22] and that to disqualify an attorney, the moving litigant must prove:

> (1) an attorney-client relationship existed between the attorney and the former client; (2) the former representation was with respect to the same or a substantially related matter as the present matter; (3) the interests of counsel's current client are materially adverse to the interests of the former client; and (4) the former client has not consented.[23]

¶9    Additionally, Elgadi states that:

> The Court must balance the following factors to determine if disqualification is appropriate: '(1) the moving litigant's interest in 'the continued loyalty of his attorney;' (2) 'the opposing litigant's interest in retaining his chosen counsel;' (3) prejudice to the opposing litigant in terms of 'time and expense required to familiarize a new attorney with the matter;' and (4) the 'policy that attorneys be free to practice without excessive restrictions.'[24]

¶10    Thus, Elgadi states that Ideal has "clearly not met its burden in this case" since, first, Rich never represented Ideal, there was no attorney-client relationship between Attorney Rich and Ideal, and Rich does not owe a duty of loyalty to Ideal.[25] Further, Elgadi argues that Rich "could not have acquired confidential information, the paramount concern regarding Rule 211.1.9, about a client she never had" and, thus, she has no information which can be used to harm the client after representation was terminated.[26] Elgadi also states that the second prong of the test fails as Rich's facilitation of the proper execution of the Memorandum of Understanding is irrelevant because the Memorandum of Understanding merely addressed the terms by which Ideal might acquire

---

[18] Pl.'s Opp'n 2.
[19] Pl.'s Opp'n 3.
[20] Pl.'s Opp'n 3.
[21] Pl.'s Opp'n 4.
[22] Pl.'s Opp'n 4 (quoting *Denero v. Palm Horizons Mgmt., Inc.*, Civil No. 2013-73, 2015 U.S. Dist. LEXIS 25864, at *2 (D.V.I. Mar. 4, 2015)).
[23] Pl.'s Opp'n 4-5 (citing *Denero*, 2015 U.S. Dist. LEXIS 25864, at *3).
[24] Pl.'s Opp'n 5 (quoting *Denero*, 2015 U.S. Dist. LEXIS 25864, at *2).
[25] Pl.'s Opp'n 5.
[26] Pl.'s Opp'n 5-6.

foreclosed properties.[27] Elgadi also states that Ideal falsely accused Rich of drafting the Memorandum of Understanding, when she merely facilitated its execution.[28]

¶11     Elgadi states that the Memorandum of Understanding, by its terms, has nothing to do with the case, as it relates only to an understanding between Zuhdi and Joseph and their attempt to exercise an assignment of the right to redeem foreclosed properties—which ended up not being redeemed.[29] The only relevance, Elgadi asserts, is that Joseph filed a document in the public record alleging that Zuhdi violated the Memorandum of Understanding, and that Elgadi recognized this dispute in his Complaint without admitting to any knowledge of or taking any position on the merits of the dispute.[30] Elgadi also claims that the Memorandum of Understanding may even be void, as it provides that if the redemption of the properties is not successful, the Memorandum of Understanding shall be null and void.[31]

¶12     Elgadi avers that two matters are "'substantially related' . . . if there is a substantial risk that confidential factual information as would normally have been obtained in the prior representation is useful or relevant in advancing the client's position in the new matter."[32] Elgadi asserts that Rich could not have obtained any information useful or relevant, as Ideal acquired the properties concerning the Memorandum of Understanding two (2) years after Rich ceased representation, Ideal acquired the properties through a U.S. Marshal's sale, the deed of which is public record, and the instant case involves Ideal's inability to operate since 2017 and Elgadi's rights as a member.[33] Thus, the matters are unrelated. Further, Zuhdi cannot point to or suggest what information that Rich could have possibly learned that would be materially adverse to his interest in this dispute.[34]

¶13     Elgadi concludes by stating that because Rich does not satisfy the first two prongs of the test, there is no need to analyze the other prongs.[35] Elgadi maintains that "[a]n attorney does not have a conflict of interest because she represented an individual with an interest in the same company four years ago in a transaction that was never consummated" and that Rich obtained "no factual information . . . that is legally relevant to the advancement of Elgadi's position in this case."[36]

¶14     In its Reply, Ideal corrects the technical errors that were present in its original Motion and provides a new affidavit and an accompanying order. Citing to *King v. Appleton*,[37] Ideal argues that a concurrent conflict of interest exists where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a former

---

[27] Pl.'s Opp'n 6.
[28] Pl.'s Opp'n 6.
[29] Pl.'s Opp'n 6.
[30] Pl.'s Opp'n n.3.
[31] Pl.'s Opp'n 7.
[32] Pl.'s Opp'n 7 (citing ESSENTIAL CONFLICTS OF INTEREST RULES, 169 (Dec. 5, 2019); RESTATEMENT OF THE LAW GOVERNING LAWYERS, § 132 cmt. e (2007)).
[33] Pl.'s Opp'n 7.
[34] Pl.'s Opp'n 7.
[35] Pl.'s Opp'n 7-8.
[36] Pl.'s Opp'n 8.
[37] 61 V.I. 339 (V.I. 2014).

client."[38] Ideal also argues that while Rich argues that Ideal was not her client, she performed work for Zuhdi in "executing certain documents concerning Ideal" and therefore, she "performed work on behalf of and thus represented Ideal."[39]

¶15    Ideal also provides evidence that Rich wrote to U.S. Marshal Jacobs concerning the redemption of certain real properties and stated in her letter, on firm letterhead, that she writes "on behalf of Ideal Development LLC," and the letter itself contained Rich's attempts to rectify a payment error arising from the Marshal's sale in Ideal's favor.[40] Further, Ideal argues that because the property referenced in the letter is the same property from which the dispute between Zuhdi and Joseph arises, Rich's prior representation concerned "a substantially related matter to that which forms the basis of this case."[41] Ideal, citing to *McKenzie Const. v. St. Croix Storage Corp.*,[42] argues that the Court must presume that confidences were disclosed and that Ideal is not required to show that confidences were actually disclosed.[43]

¶16    Ideal also cites to *In re Drue*[44] for the proposition that the Court must hold an evidentiary hearing or factual inquiry to determine whether there is a conflict, the nature of it, and whether the attorney can zealously represent the client despite the conflict.[45] Ideal also asserts that, not only is there a conflict involving a substantially related matter, but its members have a significant interest in Rich's loyalty since she represented to the public that Ideal was her client and  engaged in negotiations on Ideal's behalf.[46] Ideal alleges that there was no dispute or disagreement between Ideal's members until Elgadi raised certain issues, and that the Notice of Interest filed by Joseph contending that Zuhdi violated their agreement was filed "at Elgadi's insistence," thus making Elgadi's interest materially adverse to those of Ideal and its members.[47]

¶17    Further, "[i]n order to prove the existence of discord sufficient to prevail on Count I of the Complaint . . . , Attorney Rich would necessarily have to cross-examine her former client at trial and advocate a position contrary to the interest of her former client."[48] Ideal also argues that disqualification here is important to maintain public confidence in the integrity of the bar and to maintain public confidence in the judiciary.[49] Ideal concludes by stating that Rich may only continue as counsel with Ideal's written consent, and that the instant Motion indicates that such consent will not be forthcoming.[50]

¶18    Elgadi then filed a Motion For Leave on May 14, 2020, arguing that Ideal "inappropriately raised new arguments and submitted 'new' evidence as part of its reply."[51] Elgadi requests the

---

[38] *Id.* at n. 12 (citing V.I. RULE PROF'L CONDUCT R. 211.1.7(a)(2)).
[39] Def.'s Reply 3.
[40] Def.'s Reply 3.
[41] Def.'s Reply 4.
[42] 37 V.I. 105 (D.V.I. 1997).
[43] Def.'s Reply 4.
[44] 57 V.I. 517 (V.I. 2012).
[45] Def.'s Reply 4.
[46] Def.'s Reply 4-5.
[47] Def.'s Reply 5.
[48] Def.'s Reply 5.
[49] Def.'s Reply 6.
[50] Def.'s Reply 6.
[51] Pl.'s Mot. For Leave 1.

Court to "deem waived and disregard newly presented theories, evidence, and argument" because a "reply to an opposition is not the mechanism for presenting new theories, evidence, or argument to the Court."[52] Elgadi cites to *Perez v. Ritz-Carlton (V.I.), Inc.*,[53] as well as several court decisions from outside this jurisdiction, for this proposition.[54] Specifically, Elgadi points to "new evidence" based on an affidavit from Joseph, "a member of Ideal" who could have, prior to the Reply, "prepared and presented" the affidavit in support of the original Motion.[55] Essentially, Elgadi argues that the Court should not consider Joseph's affidavit and Ideal's new arguments because Ideal "should not be allowed to submit evidence in its reply, which was available at the time [ ] the motion was made, and to which Elgadi and Attorney Rich cannot now respond without permission of the Court."[56]

¶19    In Elgadi's Sur-Response, Elgadi contends that Joseph's affidavit in which Joseph states that the Memorandum of Understanding was drafted by Rich is false, and that Rich did not know who drafted the document but, rather, she simply "facilitated the execution of the agreement before witnesses and a notary."[57] Elgadi asserts that after reviewing Joseph's affidavit, Rich "began investigating the origins of the [Memorandum of Understanding]" and she discovered an email forwarded to her from Joseph with communication between Joseph and then-counsel for Ideal, Attorney Kevin Rames ("Rames").[58] The email contained a redline and clean version of the Memorandum of Understanding and was sent on July 1, 2014, the day Zuhdi retained Rich, and the embedded editing data of the document showed the author to be Joseph and the editor to be Rames.[59]

¶20    Further, Elgadi shows that Joseph negotiated and drafted the Memorandum of Understanding and Elgadi alleges that Joseph "knowingly submitted a false affidavit to this Court in an effort to disqualify Attorney Rich," while pointing out that Ideal has not submitted an affidavit from Zuhdi, Rich's client.[60] Elgadi avers that the Motion should be denied and Joseph's affidavit be disregarded as false, since the Motion is based solely on Rich's alleged involvement in drafting the Memorandum of Understanding.[61] Lastly, Elgadi asserts that Rich's role in calculating the redemption price is irrelevant, since Ideal did not redeem the properties.[62] In addition to other documents, Elgadi provides a supplemental affidavit from Rich and the email from Rames.[63]

---

[52] Pl.'s Mot. For Leave 1.
[53] 59 V.I. 522 (V.I. 2013).
[54] Pl.'s Mot. For Leave 2.
[55] Pl.'s Mot. For Leave 1.
[56] Pl.'s Mot. For Leave 3.
[57] Pl.'s Sur-Resp. 1.
[58] Pl.'s Sur-Resp. 1.
[59] Pl.'s Sur-Resp. 2.
[60] Pl.'s Sur-Resp. 2.
[61] Pl.'s Sur-Resp. 2.
[62] Pl.'s Sur-Resp. 2.
[63] Pl.'s Sur-Resp Ex. 1; Ex. A.

## II.    LEGAL STANDARD

### A. Motion To File Sur-Response

¶21    Virgin Islands Rule of Civil Procedure 6-1(c) states "[o]nly a motion, a response in opposition, and a reply may be served on other parties and filed with the court; further response or reply may be made only by leave of court obtained before filing. Parties may be sanctioned for violation of this limitation."[64] Sur-responses and sur-replies are generally disfavored but may be allowed if they will aid the Court in addressing relevant issues.[65]

### B. Motion Requirements

¶22    Virgin Islands Rule of Civil Procedure 6-1 governs requirements for all motions including form, support, and timing.[66] Rule 6-1(a)(4) requires motions granting affirmative relief to be accompanied by a proposed order.[67] When allegations of fact which are not in the record are relied upon to support a motion, Rule 6-1(d) requires the moving party to submit supplemental affidavits and other supporting documentation with the motion.[68] Rule 6-1(e) governs the font size, word limit, and page limit of motions and Rule 6-1(e)(3) requires that motions contain a statement that "[t]his document complies with the page or word limitation set forth in Rule 6-1(e)."[69]

### C. Disqualification of Attorneys

¶23    The Court has the inherent power to disqualify an attorney and can do so at its discretion so as to safeguard the integrity of judicial proceedings and eliminate the threat of tainted

---

[64] V.I. R. Civ. P. 6-1(c).

[65] *Augustin v. Hess Oil Virgin Islands Corp.*, 67 V.I. 488, 503 (Super. Ct. 2017) (quoting *Der Weer v. Hess Oil V.I. Corp.*, 64 V.I. 107, 122 (Super. Ct. 2016)) ("As with surresponses and surreplies, which are generally 'disfavored because parties are expected to fully and expeditiously address all matters raised in the original motion in their responses,' courts do grant leave to 'further respon[d] or reply [when it] will aid the court by addressing relevant issues, including issues that might otherwise be waived if not timely raised.'")

[66] V.I. R. Civ. P. 6-1.

[67] V.I. R. Civ. P. 6-1(a)(4) ("[I]f the motion requests affirmative relief, the motion must be accompanied by a proposed order granting the relief sought.").

[68] V.I. R. Civ. P. 6-1(d) ("When allegations of fact not appearing of record are relied upon in support of a party's motion, response, or reply, unless the court grants permission for a different schedule for the filing of supporting materials: (1) all then-available affidavits and other documents supporting the party's position shall be filed simultaneously with the motion, response or reply; (2) any supplemental affidavits or other documents in support of the party's position on the motion must be filed at least 10 days prior to hearing of the motion; and (3) if supplemental affidavits or other documents are filed by any party under subpart (d)(2), any other party may submit additional affidavits or documents at least 5 days prior to hearing of the motion.").

[69] V.I. R. Civ. P. 6-1(e) ("(1) All motions, responses and replies shall be prepared using a character font of at least 12 points in height. (2) Unless otherwise ordered by the court, all motions, responses and replies filed with the court shall not exceed the greater of 20 pages or 6,000 words in length unless leave of court has been obtained in advance for a longer submission. This page or word limit does not include any cover page, caption, table of contents, table of authorities, appendices or exhibits, the statements of undisputed or disputed facts as provided in Rule 56(c), and certificates of service. (3) Every motion, response and reply shall contain -- as part of the certificate of service -- a statement that: 'This document complies with the page or word limitation set forth in Rule 6-1(e).'").

litigation.[70] The Supreme Court of the Virgin Islands adopted on December 23, 2013, the Virgin Islands Rule of Professional Conduct, and the rules went into effect February 1, 2014.[71] The Virgin Islands Rule of Professional Conduct is Rule 211 of the Virgin Islands Supreme Court Rules, and it governs the behavior of lawyers in the Virgin Islands. Rule 211.1.9 outlines a lawyer's duty to former clients, and Rule 211.1.9(a) states that a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."[72]

¶24    Disqualification is a drastic step and a "stronger indicator than judicial intuition or surmise on the part of opposing counsel is necessary to warrant" it.[73] More than vague and unsupported allegations are needed and courts should hesitate to disqualify counsel unless absolutely necessary.[74] Accordingly, the party seeking disqualification carries a heavy burden and must meet a high standard of proof prior to a lawyer's disqualification.[75] The Third Circuit Court of Appeals established multiple factors for a court to review in deciding a motion to disqualify counsel, and this Court has subsequently adopted this test; the factors are: "1) the former client's interest in attorney loyalty; 2) the current client's interest in retaining [chosen counsel]; 3) the risk of prejudice to the current client; and 4) the court's interest in protecting the integrity of the proceedings and maintaining public confidence in the judicial system."[76]

¶25    "Because the Virgin Islands rules are substantively identical to the ABA rules, previous decisions interpreting and applying the ABA rules remain equally applicable in the interpretation and application of the Virgin Islands rules."[77] When deciding whether to disqualify an attorney on account of a former client, the District Court of the Virgin Islands found the ABA rules illuminating and stated that courts should look for the existence of the following four (4) factors: whether

---

[70] *Fenster v. Dechabert*, Case No. SX-16-CV-343, 2017 V.I. LEXIS 149, at *4 (V.I. Super. Ct. Sept. 27, 2017) (quoting first *Farrell v. Hess Oil V.I.*, 57 V.I. 50, 57 (V.I. Super. Ct. 2012); then *Rodriguez v. Spartan Concrete Prods., LLC*, 2017 U.S. Dist. LEXIS 62923, at *5 (D.V.I. Apr. 25, 2017)) ("'The Court is tasked with supervising the conduct of attorneys that appear before it; and has inherent power to disqualify any attorney if it finds such action is warranted.' 'It is at the Court's discretion to determine whether disqualification is warranted.' 'The underlying principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings and the purpose of granting such motions is to eliminate the threat that the litigation will be tainted.'").

[71] *See In re Application of Nevins*, 60 V.I. 800, 804 n.1 (V.I. 2014) (citing Promulgation Order No. 2013–0001 (V.I. Dec. 23, 2013)).

[72] V.I. RULE PROF'L CONDUCT R. 211.1.9(a).

[73] *Denero v. Palm Horizons Mgmt.*, 2015 U.S. Dist. LEXIS 110783, at *21 (D.V.I. Aug. 21, 2015) (quoting *Sanford v. Virginia*, 687 F. Supp. 2d 591, 603 (E.D. Va. 2009)).

[74] *Fenster*, 2017 V.I. LEXIS 149, at *5 (quoting *Denero*, 2015 U.S. Dist. LEXIS 25864, at *7-8) ("'Vague and unsupported allegations are not sufficient to meet this standard.' 'Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary.'").

[75] *Farrell*, 57 V.I. at 57 (quoting *Prosser v. Nat'l Rural Util. Cooperative Fin. Corp.*, 2009 U.S. Dist. LEXIS 47744, *6 (D.V.I. 2009)) ("Although 'doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a heavy burden and must meet a high standard of proof before a lawyer is disqualified.'").

[76] *Id.* at 58.

[77] *In the Matter of the Suspension of Maynard*, 68 V.I. 632, 641 n.8 (V.I. 2018).

(1) an attorney-client relationship existed between the attorney and the former client; (2) the former representation was with respect to the same or a substantially related matter as the present matter; (3) the interests of counsel's current client are materially adverse to the interests of the former client; and (4) the former client has not consented.[78]

¶26 When a Court is notified that there is an actual or potential conflict, the Court must take steps to ascertain whether it should appoint separate counsel or whether the risk posed by the conflict is too remote to warrant separate counsel.[79] The Court may hold an evidentiary hearing or factual inquiry to determine the nature of the conflict, whether the client is aware of the conflict and waived it, and whether counsel is still able to zealously represent the client despite the conflict.[80] However, whether to hold such a hearing is case-specific and may not be required if the necessary factual information has been disclosed to the Court.[81]

## III.   ANALYSIS

¶27 As a preliminary matter, the Court finds that the relevant information as to Rich's prior representation of Zuhdi has been disclosed to the Court through the motions and pleadings and that an evidentiary hearing is not necessary in the instant case.

### A. Elgadi may file his Sur-Response

¶28 While, in general, sur-replies and sur-responses are looked upon unfavorably by the Court, one instance in which they may be permitted is when a party introduces new arguments or evidence in its reply, such that another party may not adequately respond to the novel accusations or refute the proffered testimonies or documentation without a sur-response. Here, Ideal has presented new arguments and evidence, namely an affidavit from one of Ideal's members. Sur-responses and sur-replies may also be admitted by the Court when they usefully elucidate issues before the Court and are not mere repetitions of a party's argumentation. Here, Elgadi's Sur-Response helpfully identifies the author of the Memorandum of Understanding, resolving an issue in contention presented in Ideal's original Motion. Therefore, the Court will grant Elgadi's Motion For Leave and Elgadi's Sur-Response will be admitted *nunc pro tunc* as of its filing date.

### B. Ideal's Rule 6-1 failures are not fatal

¶29 As stated in denying Ideal's Motion To Dismiss, the Court declines to adopt a broad rule but, in the instant case, Ideal's failure to abide by Rule 6-1 is not fatal. Ideal included in subsequent filings the proposed order, the statement certifying compliance, and a sworn affidavit attesting to the facts Ideal alleges. Dismissal on these procedural grounds would not be warranted. However, Ideal is forewarned to be mindful of these requirements in future filings.

---

[78] *Denero*, 2015 U.S. Dist. LEXIS 25864, at *9 (discussing the similarly drafted Rule 1.9(a) of the Model Rules of Professional Conduct).

[79] *In re Drue*, 57 V.I. at 524 (citing *Campbell v. Rice*, 408 F.3d 1166, 1170 (9th Cir. 2005) (en banc)).

[80] *Id.* (citing first *Gov't of the V.I. v. Zepp*, 748 F.2d 125, 139 (3d Cir. 1984); then *Atley v. Ault*, 191 F.3d 865, 871 (8th Cir. 1999)).

[81] *Id.* (citing *Atley*, 191 F.3d at 872).

### C. Disqualification of Attorney Rich is not necessary

#### 1. There was an attorney-client relationship between Attorney Rich and Ideal

¶30     First, the Court must analyze whether an attorney-client relationship existed between Ideal and Rich. Ideal asserts that Rich represented it, and Rich counters that she represented Zuhdi, not ideal. Zuhdi is the managing member of Ideal, Rich's representation of Zuhdi involved documents concerning property Ideal intended to redeem, and, most importantly, Rich held herself out the public as representing Ideal when she mailed her letter to the United States Marshal's Service regarding the payment calculations for the Marshal's sale. Thus, the Court finds that an attorney-client relationship between Rich and Ideal can be imputed to Rich for purposes of the disqualification Motion.

#### 2. The former representation was not of a similar or substantially related matter

¶31     Second, the Court must consider whether Rich's prior representation was in a similar or substantially related matter. Rich's prior representation involved the execution of a Memorandum of Understanding drafted by another attorney concerning the rights of redemption of certain properties as between two members of Ideal, as well as work concerning the Marshal's sale of said properties, specifically a letter explaining the calculation of the redemption price. The work was done on behalf of a single member of Ideal, Zuhdi. Matters involving the redemption were settled after Rich ceased to represent Zuhdi, and the properties were purportedly never actually redeemed.

¶32     The instant representation involves an alleged other member of Ideal and concerns the inability of members of Ideal to carry on business and their dereliction of basic business requirements. The matter does not involve the redemption of the properties that were the object of the Memorandum of Understanding. Rich's *de minimis* work involving Zuhdi and the calculation of property redemption prices is not substantially similar to Ideal's inability to operate or pay required fees and taxes. Thus, as the second element is not met, the Court need not consider whether the interests are adverse or whether Ideal consented.

¶33     Lastly, the Court considers the Third Circuit Court of Appeals' balancing test for disqualification of attorneys. Given Rich's minimal representation, Zuhdi's interest in attorney loyalty is not outweighed by Elgadi's interest in retaining Rich. There is not a large risk of prejudice to the current client as the properties are not at issue and were not redeemed. Nor is the Court concerned that Rich's representation of Elgadi would impugn the integrity of the proceedings or erode public confidence in the judicial system, as Rich's work in facilitating the execution of a document and calculating property redemption prices would have little if any relevance to Ideal's alleged inability to operate, even to a casual outside observer.

### IV.    CONCLUSION

¶34     On January 15, 2020, Elgadi filed his Complaint seeking a judicial dissolution of Ideal and enforcement of his right to participate in the winding up of Ideal's affairs. Ideal was formed as a limited liability company by Joseph, who was later joined by Zuhdi, for the purpose of developing

and/or reselling certain parcels of real property in the U.S. Virgin Islands. Joseph later allegedly sold one-half (1/2) of his membership interest to Elgadi. Elgadi alleges that a dispute between Zuhdi and Joseph has prevented Ideal from operating, and that Ideal has failed to pay certain required taxes and fees.

¶35    Ideal has moved to disqualify Elgadi's chosen counsel, on the basis that she represented a member of Ideal, Zuhdi, previously. Specifically, Rich assisted in the execution of a Memorandum of Understanding between Joseph and Zuhdi concerning the redemption of certain properties, and Rich submitted to the Marshal's Office a letter calculating the redemption price of the properties. Rich then ceased her representation of Zuhdi and the properties were not redeemed. Years later, another member of Ideal, who joined the company after Rich ceased representation of Zuhdi, hired Rich to assist in seeking a judicial dissolution of the company because of an inability of other members to operate the company. Because the matter at hand is not the same or substantially similar to the previous matter Rich worked on, and after considering the factors provided by the Third Circuit Court of Appeals in its balancing test, the Court determines that disqualification of Rich is not warranted. Accordingly, it is hereby

ORDERED that Defendant's Motion To Disqualify, filed March 24, 2020, is **DENIED**; and it is further

ORDERED that Plaintiff's Motion For Leave To File Sur-Response To Reply To Opposition To Motion To Disqualify, filed May 14, 2020, is **GRANTED**; and it is further

ORDERED that Plaintiff's Sur-Response To Reply To Opposition to Motion To Disqualify, filed May 14, 2020, is **ADMITTED** into the record, *nunc pro tunc,* to **MAY 14, 2020**; and it is further

ORDERED that a copy of this Memorandum Opinion and Order shall be distributed to counsel of record.

Dated: July 30 , 2021

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY:

**DONNA D. DONOVAN**
Court Clerk Supervisor 8 /2 /2021